*Bowen, J.
The parties interested in this cause properly denominated themselves an “ association.” Their organization was-completed by the adoption of a constitution, to which they all subscribed. The object of thus uniting together is fully defined. It was limited to one purpose — a mining adventure — to be conducted *300 upon terms set forth and agreed upon. In the fruits of that adventure all were to participate according to what were deemed equitable rules. To carry on the enterprise capital was necessary to be •raised and expended, and labor must be performed in a region two thousand miles or more distant from the locality of the associated body. These two points were therefore primarily considered and decided upon. From the members of the association eight were to •be chosen to perform the journey to the mines, and, after reaching there, to employ their skill and industry in procuring the golden treasure for themselves and companions in the enterprise. Within ■a given period they were to return and place into the treasury of the parent institution the productions of their labor for distribution •among its several members. When they separated from the association, to go to their remote place of employment, they took with them in teams, implements for mining, provisions, and money, all of its resources. These they were to retain, as well as one-half of their net gains, but were to divide the other half with their fellow-associates. They must be regarded as employes — as hired men— laboring by contract for the association, whose delegates and servants they were. They might properly co-operate together, might choose a captain and other officers from their own members to direct their affairs on the way, and during their continuance abroad. This they attempted to do ; and while we are free to concede that they had full power, as detached and separate members of the association, required by the nature of their ^undertaking, to act [300 without its presence and advice, to regulate by rules of their own the duties to be observed by themselves, yet they could not, by such private regulations, dissolve the association, nor release themselves from their contract to labor and account for their earnings, or to -answer in damages for a breach of-it. The determination which they formed and acted upon after reaching California, of appropriating the property of the association among themselves individually, and of working separately, in disregard of their obligations to the association, was a most inexcusable and immoral violation of their written and valid obligations to their principals. That act can only be characterized as one of marked dishonesty and bad faith. As between the eight, it was a relinquishment of each to the others of all claims to their joint earnings. Each accepted the proposal to work alone, and share separately the benefits of his individual labor, without any recourse upon the others; but as to the *301 association into whose service they had entered, and whose interest they had undertaken to promote, they could not, by this ex parte and wrongful movement, relieve themselves from liability. Whether they wrought jointly or separately; whether their earnings were large or small; they were nevertheless responsible to the association, and could be required to account to it for whatever they made during the time they were thus employed.
The principle relied upon by-defendant’s counsel, that a partnership may be dissolved by the act of one of the partners, we do not, in the view we take of this case, intend to impugn. That is too well settled to be now questioned. But to effect that purpose the act must be done with a view to its accomplishment. It should be communicated at once to the other members of the firm. They must be advised of the new relations created by the withdrawal of 301] *a member, or a- transfer of his interest in the concern. Their future relations toward each other, and their pursuit of the particular enterprise, depend on the acquisition of such knowledge.
Now, whether the eight men intended anything more than the dissolution of their own organization, and liberty to each to work when and -where it best suited him, does not seem to be very clear. Some of them said they would never pay anything to the association. But they did not, certainly, by any expression or act signify that they intended to dissolve the original association. Their acts do not indicate that to have been their object. They were willing, doubtless, to free themselves from working together, and from, reporting any account of their gains. . But as we have before shown, while they might accomplish these ends as between themselves, they could not, standing as they did in the places of hired men, far removed from the observation of, and without the means of communicating with, their co-members at home — bound by their agreements to serve as such, and to give statements of their labor within the time agreed on — disconnect and discharge themselves from the association.
If the defendant was fortunate in his visit to and labors in the mines- — if his hopes were more than realized by his good luck in procuring gold in large amounts — he ought to have borne in mind that the aid of the Mohieansville association" rendered to him had mainly contributed to his good fortune — that in reality he owed it to the organization of that body and the employment of the means it gave him to engage in the enterprise; and that, however others *302, 303 bad fared wbo bad gone on tbe same errand with himself, or however faithless they may have been to their employes, it was bis duty, in tbe true spirit of tbe agreement, to share with his patrons tbe fruits of his toil *and good management. This be de- [302 elined to do, and it is in this proceeding sought to coerce him to perform that which be has, against equity and conscience, refrained from doing; and we think the appropriate relief should be granted.
Tbe exceptions to tbe master’s report must be sustained, and an account taken as to tbe amount of money earned by the defendant. One-half of tbe sum found to be in his hands, be will be allowed to retain. Tbe other half must be distributed to tbe holders of tbe stock of tbe association, pro rata, but excluding all of the eight wbo went to California, except tbe defendant and Philip Wertsbaugher. Tbe stock subscribed by them to share in tbe distribution with the others.

Decree accordingly.

Bartley, C. J., and Swan and Scott, JJ., concurred.
Brinkerhoee, J., having formerly been of counsel in this case, did not sit on tbe bearing of it.